## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| CHARLES MILLIKEN, JR., and MARY KAY MILLIKEN, individually and all others similarly situated, | **CASE NO. 5:24-cv-00057-JPB** |
| Plaintiff, | |
| v. | |
| BAYER HERITAGE FEDERAL CREDIT UNION | |
| Defendants. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE OF PROPOSED SETTLEMENT TO THE CLASS AND MEMORANDUM IN SUPPORT

Plaintiffs move for entry of an order granting preliminary approval of this proposed class action settlement, directing notice of the proposed class action settlement to the Settlement Class, and scheduling a hearing to consider final approval of the settlement. For the reasons set forth below, Plaintiffs respectfully request that the Court enter the proposed order granting this motion.

### I.    INTRODUCTION

Following hard-fought settlement negotiations, the Parties[1] have reached a settlement to resolve claims arising from the Security Incident announced by Bayer Heritage Federal Credit Union in January. The settlement creates substantial benefit for the Settlement Class Members,

---

[1] The parties to the settlement are the Plaintiffs, who are also the proposed Settlement Class Representatives, on behalf of the proposed Settlement Class, and Defendant Bayer Heritage Federal Credit Union ("Bayer Heritage" or "Defendant"). Capitalized terms used in this memorandum have the same meaning as in the Settlement Agreement ("S.A."), attached hereto as Exhibit 1 to the Declaration of David K. Lietz in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Lietz Declaration").

benefits targeted at the injuries sustained in this data Security Incident.  From this Settlement, Settlement Class Members will be able to claim substantial monetary benefits, including: A) compensation for documented out-of-pocket losses as a result of the Security Incident of up to $5,000; B) up to four (4) hours of time spent responding to issues raised by the Security Incident, at a rate of $20 per hour; and C) two years of three-bureau credit monitoring with at least $1,000,000.00 in identity theft/fraud insurance, and a retail value of not less than $216 per Class Member.  The Settlement benefits are uncapped in the aggregate, meaning that all Class Members may claim the full measure of all these benefits, with no reduction.

The Settlement also obligates Defendant to pay additional necessary benefits, including for a state-of-the-art notice and administration program, and as approved by the Court, service awards to the Settlement Class Representatives and attorneys' fees and expenses. All of these additional benefits will be paid separately from the Class relief.  Further, as part of the settlement, Bayer Heritage agrees to provide written confirmation to Class Counsel of business practices changes taken after the Security Incident to protect the data security of the Class Representatives and the Settlement Class during the term of the claims administration process.

The settlement is a favorable result for the Settlement Class, securing valuable benefits tailored to the facts of the case. The settlement is fair, reasonable, and adequate and meets the requirements of Rule 23(e). Plaintiffs thus move for an order preliminarily approving the settlement, directing that notice issue to the Settlement Class, and scheduling a Final Approval Hearing. In support of their motion, Plaintiffs submit the Settlement Agreement attached as Exhibit 1 to the Lietz Declaration.[2]  Plaintiffs also submit a proposed preliminary approval order.

---

[2] The Parties have confirmed the Settlement Agreement in writing and will supplement this filing with a fully executed Settlement Agreement within 7 days.

## II.    FACTUAL BACKGROUND

### A.  Overview of the Litigation

On or about October 31, 2023, Defendant became aware that an unauthorized party gained access to Defendant's computer systems.  Defendant took steps to secure its systems and investigate the nature and scope of the incident on the network.  Through its investigation, Defendant determined that its network and servers were subject to a cyber-attack that impacted its network where information on its network was accessed and acquired without authorization.  The investigation determined that files on Defendant's network were accessed by an unauthorized user from October 31, 2023, through November 1, 2023.

Defendant took steps to secure the network, and launched an investigation to determine the nature and scope of the incident. The investigation revealed that approximately 61,000 individuals, including Plaintiffs, were potentially impacted by the Security Incident. Defendant began notifying persons impacted (including Plaintiffs) in late January 2024, by sending a notice of data breach letter.

Upon receipt of their notice letters, Plaintiffs retained counsel to investigate this incident. After an initial investigation, Plaintiffs filed this action on March 20, 2024. ECF 1. Plaintiffs allege that their Private Information, and that of Class Members, was encrypted, exfiltrated, and stolen in the cyber-attack.  Plaintiffs asserted claims of negligence, breach of implied contract, and unjust enrichment.

After service of the Complaint, the Parties began a period of intensive informal discovery and mutual exchange of information.  This informal discovery provided Plaintiffs and their counsel with the necessary information to evaluate the facts and circumstances of this Security Incident,

the size of this potential class, and the fact and legal issues that would face Plaintiffs and the Class in the litigation.

During this same timeframe, the Parties began settlement discussions, and ultimately agreed to participate in a private mediation before experienced data breach mediator Bruce Friedman, Esq. of JAMS.  Mediation was scheduled for July 2024, and the Parties moved the Court to stay this action pending the mediation (a request granted by this Court). In the lead up to the mediation, the Parties engaged in additional intensive informal discovery, designed to fully inform both Parties of the facts of this case. The Parties also both prepared fulsome mediation statements. Just prior to mediation, on July 29, 2024, the Parties reached agreement on the material terms of this proposed Settlement, and the mediation was canceled. The Parties thereafter negotiated the granular terms of the Settlement, and finalized the Settlement Agreement and its exhibits on January 7, 2025.

While the negotiations were professional throughout, they were marked by significant factual and legal disputes impacting the value of the case. At all times the negotiations were at arm's-length, and free of collusion of any kind. Attorneys' fees were not discussed in any manner prior to reaching agreement on Class Relief.

### B.  The Terms of the Proposed Settlement

The following are the material terms of the settlement:

### 1.  The Settlement Class

The proposed Settlement Class is defined as: "All persons residing in the United States whose PII was compromised in the October 2023 Security Incident announced by Bayer Heritage Federal Credit Union Property Management in 2024." Excluded from the Class are: (1) any entity in which Bayer Heritage has a controlling interest and (2) the affiliates, legal representatives,

attorneys, successors, heirs, and assigns of Bayer. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

The Settlement Class consists of approximately 61,000 individuals. S.A. ¶ 47.

## 2. The Settlement Benefits

The Settlement negotiated on behalf of the Settlement Class provides for three separate forms of Class Relief: (1) reimbursement for up to $4000 in documented out-of-pocket expenses (such as fees for credit reports, unreimbursed bank fees, credit monitoring, or other identity theft insurance product, etc.); (2) lost time (up to 4 hours at $20 per hour), which is also subject to the $4,000 per Class Member cap; and; (3) two-years of three-bureau credit monitoring. S.A. ¶¶ 50. These benefits are uncapped in the aggregate, meaning that every Settlement Class Member may claim the full measure of all the relief offered.  The benefits are described more fully below:

## 3. Monetary Payments

### i. Compensation of Out-of-Pocket Expenses

Bayer Heritage will provide compensation for unreimbursed losses, up to a total of $4,000.00 per person who is a member of the Settlement Class, upon submission of a claim and supporting documentation, such as the following losses:

     i.   *Out-of-pocket expenses incurred* as a result of the Incident, including bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel;

     ii.   *Fees for credit reports, credit monitoring, or other identity theft insurance product* purchased between October 31, 2023, and the date of the close of the Claims Period.

Settlement Class Members with out-of-pocket losses set forth above must submit adequate documentation establishing the full extent of their claims

### ii. Lost Time

Settlement Class Members may submit claims for up to 4 hours of lost time, reimbursed at a rate of $20 per hour, by submitting an attestation that they spent the claimed time responding to issues raised by the Incident. This attestation may be completed by checking a box next to the sentence: "I swear and affirm that I spent the amount of time noted in response to Bayer's October 2023 data security incident."  No other documentation is needed for a lost time claim. Lost time claims are subject to the $4000 per person cap on Out-of-Pocket Expenses.

### iii.  Credit Monitoring

All Settlement Class Members shall be offered a two-year membership of three-bureau ("3B") credit monitoring with at least $1,000,000.00 in identity theft/fraud insurance. The additional credit monitoring services noted in (i) are in addition to any credit monitoring services Bayer Heritage initially offered related to the October 2023 Incident

### 4.  Business Practice Commitments

Bayer Heritage also agrees to provide written confirmation to Class Counsel of business practices changes taken after the Security Incident to protect the data security of the Class Representatives and the Settlement Class during the term of the claims administration process.

### 5.  Proposed Notice and Claims Program

The Parties have agreed upon, and request that the Court appoint Verita Global, LLC as Settlement Administrator to provide notice to Settlement Class Members and to process claims. The forms of notice (the Long and Short Forms, attached to the Settlement Agreement as Exhibits A and B) clear and concise and directly apprise Settlement Class Members of all the information they need to know to make a claim or to opt-out or object to the Settlement. Fed. R. Civ. P. 23(c)(2)(B). The Notice Plan here also requires the establishment of a Settlement website and a toll-free helpline. The Notice Plan satisfies the "best notice practicable" standard pursuant to Rule

23 of the Federal Rules of Civil Procedure by giving direct summary postcard by U.S. Mail or email notice to the 61,000 Settlement Class Members. *See Smith v. Res-Care, Inc.*, No. 3:13-5211, 2015 WL 6479658, at *2 (S.D.W. Va. Oct. 27, 2015) (approving notice program consisting of mailed individual notices, settlement website, and toll-free number).The Parties have also agreed that a reminder notice will be sent to Class Members if the claims rate is less than 2% thirty (30) days after the initial notice is sent. S.A. ¶ 33. Contact information is available for virtually all Settlement Class members. Moreover, the Long Form Notice will be posted on the Settlement Website, along with other important documents such as the Settlement Agreement, and a toll-free help line will be available to answer Settlement Class Members' questions. The individual notice effort alone is likely to reach at least 90% of the Settlement Class (and likely higher). Lietz Decl. ¶ 38. In proposed Class Counsel's experience, the reach of the Notice Plan meets that of other court-approved notice programs, and has been designed to meet due process requirements, including the "desire to actually inform" requirement. The Notice Plan is thus the best notice practicable under the circumstance of this case.

The claims process similarly draws upon the most up-to-date techniques to facilitate participation, including the ability to submit claims electronically on the Settlement Website or by mail. The cost of notice and administration will be paid by Defendant separately from the Class Relief, and is another benefit to the Class.  S.A. ¶ 50(b). Notice is estimated to cost between $72,000 to $87,000, depending upon how many email addresses Defendant has for Settlement Class Members (as email notices are less expensive than notices sent by U.S. Mail). Lietz Decl. ¶ 49.

### 6.  Attorneys' Fees and Expenses and Service Award

Proposed Class Counsel may request a combined fee and expense award of up to $175,000.

S.A. ¶ 20. Class Counsel may also request service awards of up to $2,500 each Settlement Class Representative. *Id*. ¶ 37. Any fees, expenses, or service awards will be paid by Defendant separately from the Class Relief. Proposed Class Counsel will move for fees, expenses and service awards at least 14 days before the Objection Deadline and Opt-Out Date.

### 7. Releases

The Settlement Class will release Bayer Heritage from claims that were or could have been asserted in this case. The releases are detailed in the Settlement Agreement. S.A. ¶ 55. The release here is limited to only those claims that arise from the Security Incident. Claims arising from any other materially distinct factual predicates are not released. *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig*., 91 F.4th 174 (4th Cir. 2024)

## III.    ARGUMENT

The Fourth Circuit has recognized that courts strongly favor and encourage settlements. *See, e.g., United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992) ("It has long been clear that the law favors settlement."). "This is particularly true in class actions" and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g., Six v. Loancare, LLC*, No. 5:21-cv-00451, 2022 WL 16747291, at *3 (S.D. W. Va. Nov. 7, 2022) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) and citing *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)) (noting the "strong judicial policy in factor of settlements, particularly in the class action context"). Here, this Court should follow this strong preference towards settlement, and grant preliminary approval to this proposed Settlement.

### A. Legal Standards

### 1.  Preliminary Approval of Settlement

In the event of a settlement and proposal to certify a class for settlement purposes, the Court must determine whether to issue notice to the class. Fed. R. Civ. P. 23(e)(1). The parties are obligated to provide sufficient information to enable the Court to determine whether notice is appropriate, and the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id*.

Moreover, Rule 23(e)(2) provides that a proposed settlement may be approved only after a hearing and on a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval of a proposed settlement is committed to the sound discretion of the court. *See Berry v. Schulman*, 807 F.3d 600, 608 (4th Cir. 2015). In determining whether a settlement is fair, reasonable, and adequate, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Court's Rule 23(e) obligations are addressed with a "two-level analysis." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009). To determine whether a settlement is fair, the Court considers the four factors set forth by the Fourth Circuit in *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991): "(1) the posture of the case at the time settlement was

proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel . . . ." To determine whether a settlement is adequate, the courts also look to: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.* There is a "strong presumption in favor of finding a settlement fair." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (internal quotation omitted).

In making the determination of preliminary approval, the Court does not answer the ultimate question of whether the proposed Settlement is fair, reasonable, and adequate; this analysis is reserved for the second stage of the settlement approval process. Instead, the first stage of the settlement approval process is focused on whether the settlement is sufficiently adequate to permit notice to be sent to the class. *See Hall v. Higher One Machines, Inc.*, No. 5-15-CV-670-F, 2016 WL 5416582, at *5 (E.D.N.C. Sept. 26, 2016) ("If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to and opt out of the settlement.").

For purposes of preliminary approval, evaluation under these enumerated factors confirms that the proposed settlement is fair, adequate, and reasonable; accordingly, the Court should direct that notice of the Settlement issue to the Settlement Class.

**2.  Rule 23 Settlement Class Certification**

"When a settlement is reached prior to Rule 23 certification, the law permits a class to be certified solely for the purposes of settlement." *Gamas v. Scott Farms, Inc.*, No. 5:13-CV-447-FL, 2014 WL 12546373, at *2 (E.D.N.C. Dec. 24, 2014). A district court faced with a settlement-only class need not inquire whether the class would present intractable problems with trial management, but must analyze whether the other requirements for certification must have been satisfied. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To approve a class settlement, the Court must still consider the requirements for class certification under Rule 23. *In re NeuStar, Inc. Sec. Litig.*, No. 1:14–CV–885(JCC/TRJ), 2015 WL 5674798, at *2 (E.D. Va. Sept. 23, 2015). The Settlement Class must also satisfy one of the categories of Rule 23(b). *Id.* However, the Court may disregard the manageability concerns of Rule 23(b)(3) because the Court may properly consider that there will be no trial. *See Amchem*, 521 U.S. at 620.

### 3.  Notice Form Approval

As part of the preliminary approval process, the district court must also approve the notice of the settlement that the Parties propose be sent to Class Members. *See* Fed. R. Civ. P. 23(c)(2)(B). The notice must comport with due process and provide the "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id.*; *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). Rule 23 leaves the form of the notice to the Court's discretion. *See Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 227 (E.D. Va. 2003) ("a court may exercise its discretion to provide the best notice practicable under the circumstances."); *see also* Fed. R. Civ. P. 23(c)(2)(B).

### B.  The Rule 23 and *Jiffy Lube* Factors Confirm Preliminary Approval is Warranted.

#### 1.  The Class Was Adequately Represented.

11

"[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are 'qualified, experienced, and generally able to conduct the litigation.'" *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 567 (E.D. Va. 2016). Here, the Settlement Class Representatives have the same interests as other class members as they are asserting the same claims and share the same injuries. Further, Proposed Class Counsel's experience and qualifications warrant their appointment as Class Counsel in this litigation, and the record shows proposed Class Counsel worked diligently to litigate and ultimately bring this case to resolution. Lietz Decl. ¶¶ 3-23; see also *In re: Lumber Liquidators*, 952 F.3d at 485 (finding counsel's experience in complex civil litigation supported fairness of settlement).

### 2.   The Proposed Settlement Was Negotiated at Arm's Length.

The Court can safely conclude this settlement was negotiated at arm's length, without collusion, based on the terms of the settlement itself; the length and difficulty of the negotiations. *See In re NeuStar*, 2015 WL 5674798, at *10 (adversarial encounters support a finding of arms' length negotiations). This factor supports a finding that the Court will likely be able to approve the settlement.

### 3.   The Relief is Fair, Reasonable, and Adequate.

The relief offered to Class Members in the Proposed Settlement is more than adequate under the factors outlined in Rule 23(e)(2)(c). The relief compares very favorably to dozens of other court-approved data breach settlements with similar facts, including at least one that was finally approved by a federal district court in the neighboring jurisdiction of Virginia. *See Pagan et al. v. Faneuil*, Civil Action No. 3:22-cv-297 (E.D. Va.), ECF 53 (final approval order approving settlement with similar class relief, consisting of up to $5000 in documented out-of-pocket

expenses, 3 hours of lost time at $20 per hour, a $50 cash payment for California Subclass members only, and 24 months of Financial Shield identity theft protection services).

The amount offered in settlement here is completely consistent with the scale of this litigation, which is similar to the scale of the *Pagan* case (a settlement class of approximately 53,000 persons).

Proposed Class Counsel, with their considerable experience in data breach class actions, strongly believes that the relief is fair, reasonable, and adequate.  Lietz Decl., ¶¶ 35, 38. Proposed Class Counsel bring decades of experience with data privacy litigation to bear on Plaintiffs' behalf. The Court may rely upon such experienced counsel's judgment. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.")

That the relief is fair, reasonable, and adequate is further confirmed by considering the four specific factors enumerated in Rule 23(e)(2).

### i. The Costs, Risks and Delay of Trial and Appeal.

Plaintiffs face significant risks and costs should they continue to litigate the case due to the potential expense and length of continued proceedings necessary to prosecute the litigation against Bayer Heritage through motion practice, trial, and potential appeals. Even at the pleadings stage, this is a hotly contested case with no assurance of success.  Further, if Plaintiffs prevailed on their intended motion for class certification and successfully defeated Defendant's intended motions thus proceeding to trial, Plaintiffs would have faced significant risk, cost, and delay. Plaintiffs face the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation.  As courts have remarked, this field of litigation is evolving and risky; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-

CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

While Plaintiffs strongly believe in the merits of their case, they also understand that Bayer Heritage asserts a number of potentially case-dispositive defenses. In fact, should litigation continue, Plaintiffs would likely have to immediately survive a motion to dismiss in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data incident cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp*., 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that been denied in other incident cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 293 F.R.D. 21 (D. Me. 2013). Plaintiffs dispute the defenses Bayer Heritage asserts—but it is obvious that their success at trial is far from certain. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

Although nearly all class actions involve a high level of risk, expense, and complexity, this is a particularly complex class. Data security incident cases of wide-spread notoriety and implicating data far more sensitive than the data alleged here have been found wanting at the federal district court level. See, e.g., *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), reversed in part, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit). Moreover, these cases

can take years to litigate to final resolution. Settlement in the same *In re OPM* litigation was announced in June 2022, after five full years of litigation.

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, these types of cases are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data security incident case, establishing causation on a class-wide basis is rife with uncertainty.

Another significant risk faced by Plaintiffs here is the risk of maintaining class action status through trial. The class has not yet been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014*). In re Marriott International Customer Data Securities Breach Litigation*, 341 F.R.D. 128 (D. Md. 2022), was recently decertified on appeal. See In re Marriott Int'l, Inc., 78 F.4th 677, 680 (4th Cir. 2023). The *Marriott* case has now been pending since 2019, providing a stark example about how long these data breach cases drag on. And no data breach class action – in any jurisdiction – has gone to trial and achieved a plaintiffs' verdict. This over-arching risk simply puts a point on what is true in all class actions – class certification through trial is never a settled issue, and is always a risk for the Plaintiffs.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in zero recovery to the class. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued."

*Paz v. AG Adriano Goldschmeid, Inc.*, No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). In contrast to the risks, costs, and delay posed by continued litigation and potential trial, the proposed Settlement provides certain, substantial, and immediate relief to the proposed Settlement Class without delay. It ensures that Settlement Class Members who submit valid claims for Document Out-of-Pocket Losses, Attested Time or credit monitoring will receive guaranteed compensation now. The substantial costs, risks, and delay of a trial and appeal support a finding that the proposed Settlement is adequate.

### ii. The Method of Distributing Relief is Effective.

The distribution process will be efficient and effective. The available relief is detailed clearly in the Notice, which will be provided to all Settlement Class Members, and lays out the benefits to which they are entitled through submission of an approved claim.

As an initial matter, the proposed Notice Plan includes dissemination of direct, individual summary notice by postcard. The total potential Settlement Class size is approximately 61,000 people and contact information (to provide individual notice) is available. It is expected that the individual notice effort alone will reach at least 90% of the Settlement Class (and likely higher). Lietz Decl., ¶ 48.

Therefore, Settlement Class Members will receive effective and efficient notice of the three categories of relief, which will be distributed as follows. *First*, Settlement Class Members are entitled to make Document Out-of-Pocket loss claims online via the Settlement Website or by mail. Settlement Class Members need only submit a Claim Form on the Settlement Website or by mail accompanied by reasonable documentation showing the claimed expenses to establish Documented Out-of-Pocket Losses. S.A. ¶ . If a claim is rejected for any reason, there is also a

consumer-friendly appeals process whereby claimants will have the opportunity to cure any deficiencies in their submission. *Id.* ¶ .

*Second*, Settlement Class Members seeking compensation for time spent dealing with the effects of the Security Incident need only provide an attestation that the time was spent reasonably responding to the effects of the Security Incident. S.A. ¶ .  No other documentation is needed, and it is thus a very low bar to clear in order to make a valid claim for lost time.

*Third*, Settlement Class Members may claim two-years of valuable three-bureau credit monitoring without needing to have suffered any actual misuse of their potentially compromised data to date. S.A. ¶ .  Credit monitoring may be claimed by essentially just "checking a box." Where the injury sustained by many, many Settlement Class Members is the in impending risk of fraud or identity theft, this form of prophylactic benefit is specifically tailored to the facts and circumstances of this case.

Because Settlement Class Members may make claims through an easy to use online form or by mail, the method of distributing the relief is both efficient and effective, and the proposed Settlement is adequate under this factor.

### iii.  The Terms Relating to Attorneys' Fees are Reasonable.

Proposed Class Counsel will request a combined fee and expense award of up to $175,000. S.A. ¶ . Under the Settlement Agreement, Plaintiffs' request for Attorneys' Fees and Expenses will be filed with the Court at least 14 days before the Objection and Opt-Out deadlines. In the settlement negotiations, attorneys' fees were not discussed in any manner until the Class Relief was fully negotiated. Lietz Decl. ¶ 52. The ultimate fee award will be based on an application to the Court based on Fourth Circuit law with the opportunity for comment from Settlement Class

Members.  The fees and expenses here are commensurate with those awarded in similar matters. *See Pagan*, ECF 53 (awarding $225,000 in combined fees and expenses).

Importantly, the Settlement Agreement is not conditioned upon the Court's approval of the fee award. S.A. ¶ . Accordingly, at this stage, the Court can and should conclude that it is likely to approve the Settlement for purposes of sending notice to the Settlement Class, even if it has not yet concluded whether and in what amount it would award attorneys' fees and expenses. The proposed Settlement is adequate under this factor.

### iv.  Any Agreement Required to be Identified under Rule 23(e)(3).

Rule 23(e) mandates that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal," and that the Court must then take into account any such agreements when determining whether the relief provided in the settlement is adequate. *See* Fed. R. Civ. P. 23(e)(2)-(3). Here, there are no such agreements.

### v.  The Proposed Settlement Treats Class Members Equitably.

Finally, the proposal treats all class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members will have the same opportunity to file a claim for Documented Out-of-Pocket Losses, Lost Time, and Credit Monitoring. Because the Settlement is uncapped in the aggregate, all Settlement Class Members may claim the full measure of all the Settlement Benefits offered, with no class members obtaining any greater relative benefit over another. The factor likewise supports a finding that the Court will be able to approve the Proposed Settlement, and that class notice is appropriate.

### C. The Proposed Settlement Class Meets the Requirements for Conditional Certification

To issue notice, the Court should decide it will "likely be able to . . . certify the class for purposes of judgment." Fed. R. Civ. P. 23(e)(1)(B); *Amchem*, 521 U.S. at 620. Such a decision

should not be difficult. Settlement classes are routinely certified in similar consumer data breach cases. *See, e.g., In re Capital One Consumer Data Sec. Breach Litig.*, No. 1:19md2915 (AJT/JFA)*, Doc. 118 (E.D. Va. Feb. 7, 2022); *Abubaker v. Dominion Dental USA, Inc.*, No. 1:19-cv-01050, 2021 WL 6750844 (E.D. Va. Nov. 19, 2021) (Brinkema, J.); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, No. 1:16-c-03025, 2019 WL 3183651 (D. Md. July 15, 2019). There is nothing different about this case, which is demonstrated by examining the requirements of Rule 23(a) and (b).

### 1. The Rule 23(a) Requirements Are Satisfied.

*Numerosity:* The proposed class consists of approximately 61,000 U.S. residents, indisputably rendering individual joinder impracticable. *See Jeffreys v. Commc'ns Workers of Am. AFL–CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003) (noting that "where the class numbers twenty-five or more, joinder is generally presumed to be impracticable").

*Commonality:* "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury, such that all their claims can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011) (internal citations omitted). This requires that the determination of the common question "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350 "Even a single common question will do." *Id.* at 359.

Rule 23(a)(2)'s commonality requirement is met where, as here, the defendant engaged in a common course of conduct. *Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201, 223 (E.D. Va. 2003). All Settlement Class Members are alleged to have suffered the same injury—theft of their personal data in the Security Incident—and are asserting the same legal claims. Accordingly, common questions of law and fact abound. *See, e.g.*, *Abubaker*, 2021 WL 6750844, at * 3.

**Typicality:** Typicality under Rule 23(a)(3) requires an inquiry into the "representative parties' ability to represent a class . . . ." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998). In other words, the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter*, 436 F.3d at 466-67. This requirement is readily satisfied in data breach cases. The Settlement Class Representatives' claims are typical of other class members because they arise from the same Security Incident and involve the same overarching legal theories, including the theories that Bayer Heritage breached implied contracts with Settlement Class Representatives and Settlement Class Members and failed in its common-law duty to protect their personal information. *See, e.g.*, *Abubaker*, 2021 WL 6750844, at *3.

**Ascertainability:** Rule 23 also contains the implied requirement that the court be able to "readily identify the class members in reference to objective criteria." *EQT Production Co. v. Adair*, 764 F.3d 247, 358 (4th Cir. 2014). A proposed class representative "need not be able to identify every class member at the time of certification." *Id*. "[E]xtensive and individualized fact-finding" or "mini-trials" render certification inappropriate. *Id*. (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)). Here, Defendant identified each member of the Class and sent them notice of the Security Incident.  This Settlement Class is easily ascertained.

**Adequacy of Representation:** "The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. Settlement Class Representatives do not have any interests antagonistic to other class members

and have retained lawyers who are abundantly qualified and experienced, satisfying the adequacy requirement. Lietz Decl, ¶¶ 3-23.

### 2.    The Rule 23(b)(3) Requirements Are Satisfied.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." One part of the superiority analysis—manageability—is irrelevant for purposes of certifying a settlement class. *Transurban*, 318 F.R.D. at 569.

*Predominance:* Rule 23(b)(3)'s predominance requirement tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance inquiry measures the relative weight of the common questions as against individual ones. *Amchem*, 521 U.S. at 624. "If the 'qualitatively overarching issue' in the litigation is common, a class may be certified notwithstanding the need to resolve individualized issues." *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D 183, 214 (E.D. Va. 2015) (citing *Ealy v. Pinkerton Gov't Servs.*, 514 F. App'x 299, 305 (4th Cir. 2013)). Common liability issues often predominate where class members "all assert injury from the same action." *Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 701–02 (4th Cir. 2011); *see also Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010) (finding common issues predominated where class members were exposed to "the identical risk of identity theft in the identical manner by the repeated identical conduct of the same defendant.").

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of alleged conduct by Bayer Heritage. *See, e.g.*, *Abubaker*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *13; *Anthem,* 327 F.R.D. at 311-16. The focus on a

defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *Anthem*, 327 F.R.D. at 312.

*Superiority:* "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy . . . ." 7A Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1779 (3d ed. 2005). Litigating the same claims of 61,000 persons through individual litigation would obviously be inefficient. The superiority requirement thus is satisfied. *See Equifax*, 2020 WL 256132, at *14; *Anthem,* 327 F.R.D. at 315-16.

### D. The Court Should Approve the Notice Plan, Notices, and Claim Form, and Appoint the Settlement Administration.

To satisfy the requirements of both Rule 23 and due process, Rule 23(c)(2)(B) provides that, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly requires that notice be reasonably disseminated to those who would be bound by the court's judgment. Fed. R. Civ. P. 23(e)(1). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Plaintiffs request that the Court appoint ADMIN as the Settlement Administrator and approve the Notice Plan.  The Notice Plan is uncomplicated. Bayer Heritage will generate and provide to ADMIN a Class List within 14 days of the preliminary approval order directing class notice. S.A. Settlement Timeline. Using the information in that list, ADMIN will provide individual direct notice by mailed postcard or email. Plaintiffs and Proposed Class Counsel

anticipate that such notice will reach a minimum of approximately 90% of Settlement Class Members, easily meeting the requirements of Rule 23 and due process. *See, e.g.*, Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) (recognizing the effectiveness of notice that reaches between 70 and 95 percent of the class). When implemented, the Notice Plan will provide the best notice practicable under the circumstances. Lietz Decl., ¶ 50.

The Court should also approve the proposed forms of notice attached to the Settlement Agreement (Exhibit 1) as Exhibits A and B ("Notices"), which satisfy all of the criteria of Rule 23. The Notices are clear, straightforward, and provide persons in the proposed Settlement Class with enough information to evaluate whether to participate in the settlement. The Notices also advise the proposed Settlement Class how to exclude themselves from the settlement, and how to object to the settlement, including the requested attorney fees and costs. Thus, the Notices satisfy the requirements of Rule 23. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985) (explaining a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).

Finally, the Court should approve the Claim Form attached to the Settlement Agreement (Exhibit 1) as Exhibit C. The Claim Form is written in plain language and can be submitted online or printed and mailed to the Settlement Administrator.

### E.  The Court Should Appoint Settlement Class Counsel

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation and the types of claims asserted in

the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

The Court should approve proposed Class Counsel David K. Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC and Philip J. Krzeski of Chestnut Cambronne, PA. Throughout this case, Proposed Class Counsel has demonstrated the hard work, legal scholarship, experience, and resources they bring to bear, ultimately resulting in the settlement now before the Court. The Court should thus appoint Mr. Lietz and Mr. Krzeski as Class Counsel under Rule 23(g).

**F.  Timeline of Settlement Events**

For the Court's convenience, Plaintiffs propose the following dates and deadlines leading to a final approval hearing.

| ACTION | DATE |
|---|---|
| Defendants Provide Class Member List | Within 14 days following entry of Order Granting Preliminary Approval |
| Notice Date | 37 days following entry of Order Granting Preliminary Approval |
| Motion for Attorneys' Fees, Expenses, and Service Awards to the Plaintiffs | 14 days prior to the Objection Deadline and Opt-Out Date |
| Exclusion / Opt-Out Deadline | 60 days after Notice Date |
| Objection Deadline | 60 days after Notice Date |
| Deadline to Submit Claims | 90 days after Notice Date |
| Final Approval Brief and Response to Objections Due | At least 14 days prior to the Final Approval Hearing |
| Final Approval Hearing | (To be scheduled approximately 150 days after entry of Preliminary Approval Order) |

24

## IV.    CONCLUSION

For the reasons set forth set forth set forth above, Plaintiffs request the Court enter the order proposed by the Parties granting preliminary approval, directing the Settlement Class be notified of the proposed settlement in the manner set forth in the Notice Plan, and scheduling a Final Approval Hearing.

Dated: January 8, 2025                                          Respectfully submitted,

*/s/ Ryan McCune Donovan*
Ryan McCune Donovan (WVSB #11660)
**HISSAM        FORMAN        DONOVAN
RITCHIE PLLC**
P.O. Box 3983
Charleston, WV 25339
(681) 265-3802
(304) 982-8056
zritchie@hfdrlaw.com

David K. Lietz (pro hac vice)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, LLC**
5335 Wisconsin Avenue NW
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com

Philip J. Krzeski
**CHESTNUT CAMBRONNE PA**
100 Washington Ave., Ste. 1700
Minneapolis, MN 55401-2138
Pkrzeski@chestnutcambronne.com

*Counsel for the Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 8, 2025, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF System and was thereby served on all counsel of record.


*/s/ Ryan McCune Donovan*
Ryan McCune Donovan (WVSB #11660)