## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| CHARLES MILLIKEN, JR., and MARY KAY MILLIKEN, individually and all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>BAYER HERITAGE FEDERAL CREDIT UNION<br><br>               Defendant. | **CASE NO. 5:24-cv-00057-JPB**<br><br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

Plaintiffs Charles Milliken Jr. and Mary Kay Milliken, individually and behalf of others similarly situated ("Plaintiffs"), hereby submit this Memorandum of Law in Support of their Motion for Final Approval of Class Action Settlement.

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure ("Rule") 23(e)(2) and this Court's January 13, 2025, Order Granting Preliminary Approval of Class Action Settlement ("Prelim. Approval Order") (ECF No. 23), Plaintiffs respectfully seek final approval of their class action Settlement[1] with Defendant Bayer Heritage Federal Credit Union, ("Bayer Heritage" or "Defendant") (together with Plaintiffs, the "Parties"). *See* Fed. R. Civ. P. 23(e)(2). The Settlement resolves all claims against Bayer Heritage on behalf of

---

[1] Unless otherwise indicated, capitalized terms used in this Memorandum have the same meanings as in the Class Action Settlement Agreement and Release (the "Settlement Agreement" or "SA"). ECF No. 21-1.

approximately 61,000 Class Members whose Private Information was potentially compromised in the October 2023 Data Incident affecting Bayer Heritage's computer systems.

Through extensive arms' length negotiations, the Parties reached a Settlement that provides for immediate and significant benefits for the Class. *See* Declaration of David K. Lietz Supporting Motion for Preliminary Approval of Class Action Settlement ("Lietz MPA Decl."), ¶¶ 30-32 (ECF No. 21-2). The Settlement is the result of hard-fought negotiations between experienced counsel who had a comprehensive understanding of the strengths and weaknesses of each Party's claims and defenses as a result of informal discovery and the exchange of mediation briefs in advance of a scheduled mediation before which the Parties ultimately reach an agreement. *See Id.* If approved, the Settlement will provide Class Members with the precise relief this lawsuit was filed to obtain.

Class Counsel zealously prosecuted Plaintiffs' claims, achieving the Settlement Agreement only after extensive investigation, informal discovery, and negotiations. After this Court granted preliminary approval, the Claims Administrator—with the help of the Parties—disseminated Notice to the Class and implemented the user-friendly claims process that the Court approved. Individual notice was provided directly to Class Members via first class mail. The Short Form Notice reached a total of 83% of the Class, meeting both Rule 23(c)(2)(B) and due process standards. *See* Declaration of Carla A. Peak Re: Notice Procedures ("Admin. Decl."), ¶ 13, attached hereto as **Exhibit 1**; Fed. R. Civ. P. 23(c)(2)(B). The Notice provided each Settlement Class Member with information

regarding how to reach the Settlement Website, make a Claim, and how to opt-out or object to the Settlement.

The reaction from Settlement Class Members to the Settlement is resoundingly positive. The deadline for Settlement Class Members to opt-out or object to the Settlement was April 30, 2025. No Settlement Class Members requested exclusion from the Settlement, and no objections to the Settlement or Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service Awards to Class Representatives, filed on April 7, 2025, have been filed with the Court. *See* Admin. Decl., ¶¶ 10, 11. By contrast, the Claims Deadline was May 20, 2025, and as of June 3 2025, 3,691 Claims have been submitted. *See* Admin. Decl., ¶ 10.

The Settlement delivers tangible, immediate benefits to Settlement Class Members addressing the potential harms of the Data Incident, without protracted and inherently risky litigation. It delivers a fair and adequate resolution for the Class and merits final approval. Accordingly, for the reasons set forth herein, Plaintiffs respectfully request this Court grant their Motion for Final Approval of Class Action Settlement ("Motion for Final Approval"), as well as Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, Expenses, and Service Awards ("Motion for Attorneys' Fees"), filed on April 7, 2025. ECF No. 24.

## II.    INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate by reference Plaintiffs' Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement ("Memorandum in Support of Motion for Preliminary Approval"), filed on

January 8, 2025 (ECF 21) and the accompanying exhibits filed in conjunction therewith. Plaintiffs also incorporate by reference Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Service Awards and supporting declaration. (ECF Nos. 24 and 24-1).

## III.    THE SETTLEMENT TERMS

The Settlement negotiated on behalf of the Settlement Class provides for three separate forms of Class Relief: (1) reimbursement for up to $5,000.00 in documented out-of-pocket expenses (such as fees for credit reports, unreimbursed bank fees, credit monitoring, or other identity theft insurance product, etc.); (2) lost time (up to 4 hours at $20.00 per hour), which is also subject to the $5,000.00 per Class Member cap; and; (3) two-years of three-bureau credit monitoring. S.A. ¶¶ 50.  These benefits are uncapped in the aggregate, meaning that every Settlement Class Member may claim the full measure of all the relief offered.

### A. Reimbursement for Actual Out-of-Pocket Losses.

Bayer Heritage will provide compensation for unreimbursed losses, up to a total of $5,000.00 per person who is a member of the Settlement Class, upon submission of a claim and supporting documentation, such as the following losses: out-of-pocket expenses incurred as a result of the Incident, including bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel; and fees for credit reports, credit monitoring, or other identity theft insurance product purchased between October 31, 2023, and the date of the close of the Claims Period. S.A. ¶ 50(a).

Settlement Class Members with out-of-pocket losses set forth above must submit adequate documentation establishing the full extent of their claims

**B. Lost Time.**

Settlement Class Members may submit claims for up to 4 hours of lost time, reimbursed at a rate of $20.00 per hour, by submitting an attestation that they spent the claimed time responding to issues raised by the Incident. This attestation may be completed by checking a box next to the sentence: "I swear and affirm that I spent the amount of time noted in response to Bayer Heritage's October 2023 data security incident." No other documentation is needed for a lost time claim. Lost time claims are subject to the $5,000.00 per person cap on Out-of-Pocket Expenses. S.A. ¶ 50(a).

**C. Credit Monitoring.**

All Settlement Class Members shall be offered a two-year membership of three-bureau ("3B") credit monitoring with at least $1,000,000.00 in identity theft/fraud insurance. The additional credit monitoring services noted in (i) are in addition to any credit monitoring services Bayer Heritage initially offered related to the October 2023 Incident. S.A. ¶ 50(b).

**D. Additional Security Measures.**

Bayer Heritage also agreed to provide written confirmation to class counsel of business practices changes taken after the Security Incident to protect the data security of the Class Representatives and the Settlement Class during the term of the claims administration process.

## IV.   NOTICE AND CLAIMS ADMINISTRATION

### A. Direct Mail Notice.

On January 21, 2025, Verita received one a list from Defendant of 61,166 persons identified as the Class List. Admin. Decl. ¶ 3. Verita undertook several steps to review the records that were provided and determined the Class List contained 60,840 unique individuals. *Id*. To ensure that the Notice of Proposed Settlement (in Postcard format) would be deliverable to Settlement Class Members, Verita also ran the Class List through the USPS's National Change of Address ("NCOA") database and updated the Class List with address changes received from the NCOA. *Id*.

On February 19, 2025, Verita caused 60,840 Short Form Notices to be mailed to the Settlement Class via First Class Mail. *Id*. ¶ 4. On April 18, 2025, Verita caused 58,594 Reminder Notices to be mailed to Settlement Class Members who had not yet submitted a Claim Form. *Id*. ¶ 5. Verita has reason to believe that the Short Form Notice reached 83% of the Settlement Class. *Id*. ¶ 13.

### B. Post Office Box, Website, Toll-Free Number, and Email Address.

In addition to the individual direct notice provided, Verita created a dedicated settlement website on or about January 27, 2025, *Id*. ¶ 8. Visitors to the website can download copies of the Notice, Claim Form, and other case-related documents. *Id*. On February 19, 2025 Verita added a Claim Filing portal to the website where visitors could also submit claims online and upload supporting documentation. *Id*.

Verita also established a toll-free help line ("Toll-Free Number"), available 24 hours a day, seven days a week, to provide Settlement Class Members with additional information about the settlement. *Id.* ¶ 9.

### C. Claims.

The timing of the claims process was structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, make a claim or decide whether they would like to opt-out or object. The deadline to submit a claim form was May 20, 2025. As of June 4, 2025, Verita has received 3,691 timely filed claims. *Id.* ¶ 10. Verita will provide a final claims report to the Parties once it processes all Claim Forms received by the deadline for Settlement Class Members to submit claims.

### D. Requests for Exclusion and Objections.

Settlement Class Members were provided up to and including April 30, 2025, to object to or to request exclusion from the Settlement. Similar to the timing of the Claims Process, the timing with regard to objections and requests for exclusion was structured to give Settlement Class Members sufficient time to access and review the Settlement documents—including Plaintiffs' Motion for Attorneys' Fees, which was filed fourteen (14) days prior to the deadline for Settlement Class Members to object or exclude themselves from the Settlement. As of June 4, 2025, Verita has received no requests for exclusion from the Settlement and no objections. *Id.* ¶ 10, 11. Settlement Class Members were also instructed to file objections to the Settlement with the Court. To date, no objections have been filed.

## V.    LEGAL STANDARD

Plaintiffs bring this motion pursuant to Rule 23(e), under which a class action may not be settled without approval of the Court. Fed. R. Civ. P. 23(e). The primary concern is the "protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). The Court may "limit its proceedings to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975). If the court concludes that the proposed settlement is "fair, reasonable, and adequate," it will give final approval to the settlement. *In re Red Hat, Inc. Sec. Litig.*, 5:04-CV-473-BR(3), 2010 WL 2710517, at *1 (E.D.N.C. June 11, 2010) (citations omitted).[2] The court begins with a "strong initial presumption that the compromise is fair and reasonable." *S.C. Nat. Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991).

The Court must make a determination as to the fairness, reasonableness, and adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2); *Manual for Complex Litigation (Fourth)* ("MCL"), § 21.632 (4th ed. 2004). The approval process involves two steps. At the first, or preliminary approval stage, the Court need only find that the settlement is within "the range of possible approval" and warrants notice being issued to the class. *Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 827 (E.D.N.C. 1994)

---

[2] Report and recommendation adopted, 5:04-CV-473-BR, 2010 WL 2710446 (E.D.N.C. July 8, 2010).

(citing *In Re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983)). This first step involves both preliminary certification of the class and an initial assessment of the proposed settlement. *Id.*; *see also See Manual for Complex Litigation*, § 30.41 (3d ed. 1995). It is only after a court has preliminarily approved a settlement, and notice has been provided to the Class, that the court makes a final determination of the fairness, adequacy, and reasonableness of a Settlement.

The primary concern for a court in reviewing a proposed class settlement is to ensure that the rights of class members have received sufficient consideration in settlement negotiations. *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158–59. Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001).

Moreover, as the Fourth Circuit has recognized, courts strongly favor and encourage settlements. *See, e.g., United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992) ("It has long been clear that the law favors settlement."). "This is particularly true in class actions" and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g., Six v. LoanCare, LLC*, No. 5:21-cv-00451, 2022 WL 16747291, at *3 (S.D. W. Va. Nov. 7, 2022) (slip copy) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) and citing *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d

Cir. 1998 (noting the "strong judicial policy in factor of settlements, particularly in the class action context").

Plaintiffs now ask this Court to grant final approval of the proposed Settlement as fair, adequate, and reasonable so that Plaintiffs and Settlement Class Members may begin to appreciate the monetary and non-monetary benefits of the Settlement.

## VI.    ARGUMENT

### A. The Claims Administrator Provided Notice Pursuant to this Court's Preliminary Approval Order and Satisfied Federal Rule of Civil Procedure 23 and Due Process.

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> (i) clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

Here, the direct mail Notice of Proposed Settlement (in Postcard format) is the gold standard and is consistent with Notice programs approved by other courts. *See, e.g., Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 472 (W.D. Va. 2011) (approving notice where individual direct notice mailed by fourth-class mail and settlement website and toll-free number established); *Smith v. Res-Care, Inc.*, No. 3:13-5211, 2015 WL 6479658, at *4 (S.D. W. Va. Oct. 27, 2015) (approving notice where individual direct notice mailed and settlement website and toll-free number established); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) (finding direct mail Notice to each class members' last known address—and a second notice if the first was undeliverable—was the best practicable and satisfied notice requirements). The content of the Notice provided adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through an attorney, that the court will exclude any class member who requests exclusion, and the binding effect of final approval and class judgment. *See* Verita Decl at Exs. A–B. The Notice utilized clear and concise language that is easy to understand, and the Notice was organized in a way that allowed Settlement Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate.

Moreover, the Claims Administrator—with the assistance of the Parties—has taken all necessary measures to ensure notice reached as many of the Settlement Class Members

as possible. Direct notice was sent to 100% of the Settlement Class Members and reached 83% of the Settlement Class. Verita Decl., ¶ 13. Such notice complies with the program approved by this Court in its Preliminary Approval Order, is consistent with (and well above) Notice Programs approved in the Fourth Circuit and across the United States, is considered a "high percentage," and is within the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, Fed. Jud. Ctr., "Managing Class Action Litigation: A Pocket Guide or Judges", 27 (3d Ed. 2010); *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 236 (S.D. W. Va. 2005) (approving publication notice rate of approximately 80% of the U.S. population where Settlement Class Members were exposed to notice an average of 2.6 times throughout notice program).

**B. The Settlement Class Should be Finally Certified for Settlement Purposes.**

As Plaintiffs set forth at length in their Motion for Preliminary Approval, the proposed Settlement Class satisfies all of the requirements of Rule 23. *See* Fed. R. Civ. P. 23(a), (b)(3). The Court preliminarily certified the Settlement Class in its Preliminary Approval Order. Prelim. Approval Order, ECF No. 24. Nothing has occurred that would change the Court's previous determination that Plaintiffs satisfy the requirements under Rule 23. Fed. R. Civ. P. 23(a), (b)(3). Specifically, the Settlement Class still meets the requirements of numerosity, commonality, typicality, adequacy of representation, predominance, and superiority under Rule 23(a) and (b)(3). *Id.* Thus, the Court should finally certify the Settlement Class for settlement purposes.

### C. The Settlement is Fair, Reasonable, and Adequate and Should Be Approved.

### 1. The Terms of the Settlement Warrant Final Approval under the *Jiffy Lube* Test.

To determine final approval, the Fourth Circuit "adopted a bifurcated analysis, separating factors relating to the 'fairness' of the settlement from those relating to its 'adequacy'." *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 828 (E.D.N.C. 1994).[3] Fairness focuses on whether the proposed settlement was the product of good-faith bargaining at arm's length, free from collusion. *Jiffy Lube*, 927 F.2d at 159. Adequacy "focuses on whether the consideration provided to the class members is sufficient." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-00400BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009). The proposed settlement is "not to be judged against a hypothetical or speculative measure of what might have been achieved by negotiators" in the best of all possible deals. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (affirming district court's final approval of class settlement).

### 2. The Settlement Terms Meet the *Jiffy Lube* Adequacy Requirement.

In analyzing the adequacy of a proposed settlement, the Court should consider the *Jiffy Lube* factors: (1) the relative strength of the case on the merits; (2) any difficulties of

---

[3] "In the Fourth Circuit, the Rule 23(e)(2) analysis has been condensed into the two-step *Jiffy Lube* test which examines the fairness and adequacy of the settlement." *Skochin v. Genworth Fin., Inc.*, No. 3:19-cv-49, 2020 WL 6697418, at *2 (E.D. Va. 2020) (slip copy); *In re Lumber Liquidators Chinese-Manufactured Flooring Prods., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020) ("[B]ecause our factors for assessing class action settlement almost completely overlap with the new Rule 23(e)(2) factors, the outcome … would be the same under both our factors and the Rule's factors."); *see also Yost v. Elon Prop. Mgmt. Co.-Lexford Pools 1/3, LLC*, No. ELH-21-1520, 2023 WL 185178, at *4 (D. Md. Jan. 13, 2023) (same) (granting final approval after evaluating adequacy and fairness of settlement under *Jiffy Lube* factors).

proof or strong defenses the plaintiff and class would likely encounter if the case were to go to trial; (3) the expected duration and expense of additional litigation; (4) the solvency of the defendants and the probability of recovery on a litigated judgment; and (5) and the degree of opposition to the proposed settlement. *Beaulieu*, 2009 WL at *26 (citing *Jiffy Lube*, 927 F.2d at 158; *Horton*, 855 F. Supp. at 829–30).

> ### i.    The Relative Strength of the Case on the Merits, the Risks of the Case if the Case Were to Go to Trial, and the Duration and Expense of Additional Litigation Weigh in Favor of Final Approval.

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. *See S.C. Nat'l Bank v. Stone*, 749 F. Supp. At 1423 (D.S.C. 1990) (noting that settlement spares litigants the uncertainty, delay, and expense of a trial and appeals while simultaneously reducing the burden on judicial resources). Here, the first three *Jiffy Lube* factors are closely related, and weigh in favor of final approval of the proposed settlement.

The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs believe their case is strong, there would be substantial risk in litigating the case. Data breach cases are, by nature, especially risky and expensive. Such cases also are innately complex. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800, 2020 WL 256132, at *32–33 (N.D. Ga. Mar. 17, 2020) (recognizing the complexity and novelty of issues in data breach class actions); *Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.") ("This field of litigation is evolving; there is no guarantee of

the ultimate result."). This case is no exception to that rule. It involves approximately 61,000 class members, complicated and technical facts, and a well-funded and motivated defendant.

There are numerous substantial hurdles Plaintiffs would have to overcome before the Court might find a trial appropriate, including a motion to dismiss, class certification, and summary judgment. Like any complex class action, data breach cases are challenging and time consuming to litigate, particularly here, where Bayer Heritage disputes Plaintiffs' allegations and denies that it is liable for any harm caused to Plaintiffs from the Data Incident. Defendant has indicated it will vigorously defend the case. While Plaintiffs believe their claims are strong, success is not guaranteed. Thus, despite Plaintiffs' confidence in the strength of this case, numerous legal issues and factual disputes exist that undermine the certainty of a more favorable outcome for the Settlement Class.

Rather than face this risk and uncertainty, the Settlement allows for Settlement Class Members to obtain benefits within the near future—as opposed to potentially waiting for years—and eliminates the possibility of receiving no benefits whatsoever. *See In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact …. That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."). Resolution in the near-term also helps mitigate any harm that the Settlement Class Members may have suffered by providing access to credit monitoring benefits in the near-term, rather than after prolonged litigation.

Litigating this case to a favorable conclusion will require a considerable amount of time and resources, and weighs in favor of accepting the Settlement now. *See In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'") (internal citation omitted)).

Here, the monetary relief provided for in the Settlement represents a significant and excellent result for the Settlement Class. Class Members may make a claim for up to $5,000 in reimbursement of Out-of-Pocket Losses, inclusive of up to four hours of lost time at a rate of $20.00 per hour, and two years of credit monitoring and identity theft insurance, to help protect against potential future effects of having their information allegedly compromised in the Data Incident. These benefits are uncapped in the aggregate, so each Settlement Class Member may claim the full extent of the monetary benefits for which they are eligible.

The relief obtained here represents a sizeable recovery for the Settlement Class and represents real, meaningful benefits for Settlement Class Members.[4] The Settlement

---

[4] These Settlement terms are consistent with, and in fact better than, agreements approved by Courts in other, similar data breach cases. *See, e.g., Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020) (data breach settlement providing up to $280 in value to Class Members in the form of: reimbursement up to $180 of out-of-pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements;); *Baksh v. IvyRehab Network, Inc.*, No. 7:20-cv-01845 (S.D.N.Y. Jan. 27, 2021) (providing up to $75 per class member out-of-pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security

provides benefits that address all potential harms of a data breach without the substantial risks, uncertainties, and duration and expense of continued litigation. Accordingly, the Settlement easily weighs in favor of final approval.

### ii. The Solvency of Bayer Heritage on a Litigated Judgment is Neutral and Does Not Preclude Final Approval.

There is no evidence that Bayer Heritage is in danger of becoming insolvent in the likelihood of a recovery in Plaintiffs' favor on a litigated judgment. Thus, this factor is neutral in the analysis and does not preclude the Court from granting final approval.

### iii. The Degree of Opposition to the Proposed Settlement.

The reaction of the Settlement Class reaction to the proposed Settlement has been undeniably positive. As of May 28, 2025, out of the 60,840 Settlement Class Members who were sent notice, none have requested exclusion from the Settlement Class and none have objected to the Settlement. Verita Decl., ¶ 10, 11. This lack of objections and opt-outs from supports the conclusion that the Settlement satisfies the adequacy requirement. *See Skochin v. Genworth Fin., Inc.*, Civil Action No. 3:19-cv-49, 2020 WL 6697418, at *4 (E.D. Va. 2020) (holding that proposed settlement satisfied adequacy requirement with 191 opt outs and 32 objections out of class of 207). "It is well established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *West v. Continental Automotive, Inc.*, No. 3:16-cv-00502-FDW-DSC, 2018 WL 1146642, at *6

enhancements).

(W.D. N.C. Feb. 5, 2018)) (quoting *National Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (collecting cases)).

### D. The Settlement Terms Meet the *Jiffy Lube* Fairness Requirement.

The Fourth Circuit has listed four factors that a court should consider in concluding whether a proposed settlement agreement is fair and reached in good faith and without collusion: (1) the posture of the case at the time it settled; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the relevant experience of counsel. *Beaulieu*, 2009 WL at *24 (citing *Jiffy Lube*, 927 F.2d at 158–59; *Horton*, 855 F. Supp. at 828).

"A proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arms' length negotiations." *Harris v. McCrackin*, C.A. Nos. 2:03–3845–23, 2:03–3943–23, 2:04–2314–23, 2006 WL 1897038, at *5 (D. S.C. July 10, 2006); *see also ADESSO Homeowners' Ass'n v. Holder Properties, Inc.*, No. 3:16-cv-710-JFA, 2017 WL 11272589, at *8 (D. S.C. May 23, 2017) ("[A] proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arms' length negotiations."). This presumption is applicable here.

Here, the Settlement is the result of protracted and intense, arm's-length negotiations between highly experienced attorneys who are familiar with class action litigation—and data breach class actions in particular—and with the legal and factual issues in these cases. *See* Lietz MPA Decl., ¶¶ 30-32. Before discussing potential settlement, the Parties completed an extensive investigation and exchanged informal discovery and

mediation briefs—both of which helped them to fully understand the strengths and weaknesses of their claims and defenses and the risks of continued litigation. *Id.* The Parties had a mediation scheduled for July 29, 2024 with the esteemed mediator Bruce Friedman, Esq. Of JAMS, however just prior to mediation the Parties reached an agreement on the material terms of the Settlement, so the mediation was canceled. *Id.* Following their agreement on the material terms, the Parties continued negotiating back and forth for weeks before reaching the finer points of the Settlement Agreement and associated exhibits. *Id.* Throughout all negotiations, Settlement Class Counsel and counsel for Defendant fought hard for the interests of their respective clients. Negotiations were at arms-length, and there is no evidence of collusion.

Accordingly, the Settlement satisfies the *Jiffy Lube* test for fairness and adequacy, and the Settlement should therefore be finally approved by the Court.

## VII.    CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Settlement Class Members substantial, immediate relief in the form of direct reimbursements for expenses incurred and time spent relevant to the Data Incident, and credit monitoring and identity theft protections. For these and the above reasons, Plaintiffs respectfully request this Court grant their Motion for Final Approval of the Class Action Settlement, finally certify the Settlement Class, and determine that the Notice met the requirements of Rule 23(c)(2)(B) and due process.

Respectfully submitted this 6th day of June 2025.

/s/ Ryan McCune Donovan
Ryan McCune Donovan (WVSB #11660)
**HISSAM FORMAN DONOVAN
RITCHIE PLLC**
P.O. Box 3983
Charleston, WV 25339
(681) 265-3802
(304) 982-8056
zritchie@hfdrlaw.com

David K. Lietz (*pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com

Philip J. Krzeski
**CHESTNUT CAMBRONNE PA**
100 Washington Ave., Ste. 1700
Minneapolis, MN 55401-2138
Tel:  (612) 339-7300
Fax:  (612) 336-2940
Pkrzeski@chestnutcambronne.com

*Class Counsel and Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 6, 2025, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF System and was thereby served on all counsel of record.

*/s/ Ryan McCune Donovan*
Ryan McCune Donovan (WVSB #11660)